**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TIFFANY A. BROWN, | : | CIVIL CASE NO. |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | |
| Defendant. | : | NOVEMBER 10, 2023 |

**COMPLAINT**

**I.     PRELIMINARY STATEMENT**

1.  This action seeks declaratory, injunctive, and equitable relief, and compensatory damages, and costs and attorney fees for the race and color discrimination suffered by the plaintiff when the defendant refused to renew the plaintiff's employment on account of the plaintiff's race and color in violation of the provisions of the Title VII of the Civil Rights Act of 1964, as amended.

2.  Also, this action seeks declaratory, injunctive, and equitable relief, and compensatory, and costs and attorney fees for the race and color discrimination suffered by the plaintiff when the defendant constructively discharged the plaintiff from her employment on account of the plaintiff's race and color in violation of the provisions of the Title VII of the Civil Rights Act of 1964, as amended.

3.  Further, this action seeks declaratory, injunctive, and equitable relief, and compensatory, and costs and attorney fees for the gender and race discrimination suffered by the plaintiff when the defendant paid the plaintiff compensation substantially less than the compensation it paid to two male employees and a Hispanic female employee who were, in all material respects, similarly situated to

1

the plaintiff in violation of the provisions of the Title VII of the Civil Rights Act of 1964, as amended.

4. Additionally, this action seeks declaratory, injunctive, and equitable relief, and compensatory damages, and costs and attorney fees for the unlawful retaliation to which the plaintiff had been subjected by the defendant when it (1) refused to renew her contract of employment for the 2023-2024 academic year; (2) subjected her to a baseless investigation; and (3) constructively discharged her from her position as a tenure track Assistant Professor because the plaintiff opposed the race and color discrimination to which she had been subjected by the defendant in violation of the provisions of the Title VII of the Civil Rights Act of 1964, as amended.

## II.   **JURISDICTION**

5. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

6. Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 1367, Title 28 U.S.C. § 2201(a), and Title 42 U.S.C. §2000e-5(f).

7. All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), have occurred or have been complied with in the following manner:

a. A charge of employment discrimination on the basis of race, color, and unlawful retaliation was filed with the United States Equal Employment Opportunity Commission and amended on or about April 5, 2023, which filings were within 300 days of the commission of the unlawful employment practice alleged

therein.

b.  On November 8, 2023, the plaintiff was issued a "Dismissal and Notice of Rights" by the United States Equal Employment Opportunity Commission. *Exhibit 1.*

c.  A complaint of employment discrimination on the basis of race, color, and unlawful retaliation and amended on or about April 5, 2023, were filed with the State of Connecticut Commission on Human Rights and Opportunities, which filing was within 300 days of the commission of the unlawful employment practice alleged therein.

d.  On October 27, 2023, the plaintiff was issued a "Release of Jurisdiction" by the State of Connecticut Commission on Human Rights and Opportunities. *Exhibit 2.*

8.    Declaratory, injunctive, compensatory, and equitable relief is sought pursuant to Title 28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g).  Compensatory damages are sought pursuant to Title 42 U.S.C. §1981a.

9.    Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k), and Title 42 U.S.C. §1988.

### III.   **VENUE**

10.   This action properly lies in the District of Connecticut pursuant to Title 29 U.S.C. §1391(b) because the claims arose in this judicial district, and pursuant to Title 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

## IV.   PARTIES

11.   The plaintiff, at all times relevant to her complaint, was a citizen of the United States residing in New York, New York.

12.   The plaintiff's race is African American, and her color is Black.

13.   The defendant is a political subdivision of the State of Connecticut.

14.   The defendant is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

15.   The defendant is an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

16.   The defendant employs in excess of fifteen employees.

17.   The defendant is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

## V.   FACTS

18.   In 2014, the plaintiff was awarded a Bachelor of Science degree in Foreign Service, Culture and Politics, Honors Psychology Program, from Georgetown University, and in 2016, she was awarded an M.A. in Social-Organizational Psychology, as well as an Advanced Certificate in Cooperation and Conflict Resolution Studies from Columbia University.

19.   In 2018, the plaintiff was awarded an M.Ed. in Policy and Management from Harvard University, and in 2021, the plaintiff was awarded a Ph.D. in Education and Organizational Studies by Harvard University.

20.   In 2021, the plaintiff received and accepted an offer of employment from the

defendant to the position of Assistant Professor for the 2021-2022 academic year.

21.  In her position as Assistant Professor, the plaintiff designed and taught doctoral level courses in organizational leadership and workplace learning to approximately sixty (60) students.

22.  Throughout her employment with the defendant, the plaintiff performed her duties and responsibilities in an exemplary manner.

23.  Despite  her capable performance, the plaintiff throughout her employment with the defendant, was subjected to discriminatory treatment in the terms and conditions of her employment based on her race, color, and gender.

24.  The race and color discrimination to which the plaintiff was subjected by the defendant became more pronounced during her second year of employment, the 2022-2023 academic year, resulting in the plaintiff being subjected to a hostile work environment, the non-renewal of her appointment as a tenure track Assistant Professor, and being  constructively discharged by the defendant from her employment.

25.  From the very start of her employment, the defendant exhibited an inherent race and color bias when the plaintiff, who had no experience teaching race related courses, was assigned by the defendant to assume the responsibility to teach such courses.

26.  Assigning race related courses to the plaintiff, with no experience or qualifications to teach such courses, betrayed the inherent racial bias that the plaintiff confronted throughout her employment with the defendant.

27.  The defendant resorted to an opinion, based on racial stereotypes, that the plaintiff,

being African American and Black, would be better suited to teach race related courses than non-African American and non-Black professors similarly situated to the plaintiff.

28.    Shortly after the plaintiff requested that the defendant explain in writing the reasons it believed that she was qualified to teach race-related courses, the defendant rescinded her assignment.

29.    On August 18th, 2022, Casey Cobb ("Cobb"), Neag Endowed Professor of Education Policy, University of Connecticut, prior to the start of the 2022-2023 Academic Year, sent an email to the plaintiff with the subject line "Fall email to EdD cohort." *Exhibit 3.*

30.    Cobb and the plaintiff were both scheduled to teach the EdD students in Fall 2022.

31.    The email summarized decisions made without the plaintiff's input regarding the composition and scheduling of classes for the EdD cohort.

32.    In the email, Cobb identified a conflict in schedules of the EdD students', stating, "I had one of the Bridge students email me a few days ago asking about the possibility of holding the Aug 30th class remotely, due to her and two other students' concerns about making class on their first day of school. I didn't think of this and probably should have, but I also am not changing the schedule. Just making you aware the first day will be hectic and people will undoubtedly be late, as some travel from far and may not be able to leave school on time that day. In fact, expect throughout the semester 1-2 student (sic) invariably arrive late and are always apologetic. It's just the reality with their positions and emergencies come up."

33.    Cobb also acknowledged that accommodations are made in scheduling courses for

the students, who mostly work full-time during the day.

34.  Cobb in his email informed the plaintiff that "You'll see in the email below the routine for the back to back courses. Our courses are a little shorter than normal because of the back to back nature after they work all day. We give them a 30 minute break for dinner. So you're course will start at 4 and go to 6:15. Throw in a short break as you see fit. Then I pick them up at 6:45 and go to 9 pm."

35.  On or about November 1, 2022, the plaintiff had been teaching the EdD cohort, a course entitled "Workplace Learning (EDLR 5202), which was scheduled from 4:15 p.m. to 6:15 p.m., as detailed in *Exhibit 3*.

36.  Based on her experience in teaching the EDLR 5202 class for approximately two months, the plaintiff emailed Cobb and Laura Burton ("Burton"), Department Head, Educational Leadership and Professor, Sports Management, University of Connecticut, to inform them that the students had not been able to make class on time when coming from their workplace commitments.  *Exhibit 4.*

37.  In her email to Cobb and Burton, *Exhibit 4,* the plaintiff explained that the students have been regularly unable to attend class on time, as well as describing the impact on her own situation as an employee in terms of increased commuting costs to the defendant's campus.

38.  Cobb unreasonably suggested that he and the plaintiff swap time slots, which as the plaintiff pointed out did not solve the issue of the time slot itself being scheduled at a time slot when most students were still technically at work.

39.  In response to Cobb's noting that he lives just a few minutes away from campus, the plaintiff reminded Cobb that although the time slot may work for him, it does

not work for students who are commuting from substantial distances to attend class.

40.     The plaintiff also reminded Cobb that he had anticipated this issue in the August 18, 2022, email he had sent to the plaintiff, and took no action at that time to accommodate the students.

41.     In a subsequent email dated November 1, 2022, at 3:09 p.m., the plaintiff admonished Cobb for ignoring the students' needs as well as her needs.  "The problem is that you have known since before the semester started that students regularly cannot make my class on time and don't want to hold remote sessions to better serve their needs.  You've ignored both their needs and mine (as an individual and as your colleague) by proposing we simply swap times knowing that the issue is arising because of a consistent timing conflict for the students.  I cannot join you in knowing that this does not work for them and choosing against their best interests.  The students will get to vote today, because I want to know what they think. Depending on their responses (which I am happy to share), I will get back to you on the plan for how to best support them moving forward." *Exhibit 4.*

42.     On November 1, 2022, only eight of her 19 students were present at the start of the class.

43.     When all the students were present, the plaintiff informed the students that they should vote in her absence on which of the remaining sessions they would prefer to have conducted remotely for the remainder of the semester.

44.     After the students voted, the plaintiff informed Cobb and Burton that 60-80% of the students had expressed their preference to have at least two additional remote sessions.

45.     Burton responded to the plaintiff's communication, stating, "[a]fter reviewing what has been shared, it makes sense to offer the Nov. 8th course remotely. The final two classes (11/15 and 12/6) must meet in person. If students have concerns, please have them contact me directly." *Exhibit 4.*

46.     On November 3rd, 2022, the plaintiff informed Burton, Cobb, and Jason G. Irizarry ("Irizzary"), Ed.D, Dean of the Neag School of Education, University of Connecticut,  by email that she would be reporting Burton and Cobb's conduct to the Office of Institutional Equity in summarily disregarding her recommendation as well as ignoring the preference of the students regarding the remaining classes that should be taught remotely.

47.     The plaintiff raised Burton's "continued microaggressions toward [her] on [her] work since the start of [her] time here with reference to some of the research [Burton has] done on the topic regarding black female experiences in particular…yesterday's [November 1] interaction was an escalation of the *passive aggression/discrimination* [she had] experienced since last Spring when you tried to rationalize assigning me to the social justice leadership class even though Alex had also been hired for the same position and literally describes herself as a race and class scholar…." *Exhibit 5 (Emphasis added).*

48.     On November 4, 2022, Jennifer McGarry ("McGarry"), chair of the EDLR PTR Committee, provided the plaintiff a communication from the Promotion and Tenure Review Committee stating that it had voted not to recommend the plaintiff for reappointment to the position of Assistant Professor in the upcoming academic year. *Exhibits 6 and 7.*

49.   Although the communication from McGarry was received by the plaintiff on November 4, 2022, *Exhibit 6,* the vote of the committee allegedly took place on October 5, 2022.  *Exhibit 7.*

50.   Assuming that the date of the vote on the plaintiff's reappointment is accurate, the procedure followed by the committee failed to comport with the PTR procedures to which the defendant and the union ("AAUP") had agreed.

51.   The decision not to reappoint the plaintiff was finalized only after the plaintiff had informed Burke. Cobb, and Irizarry that she would be filing a discrimination charge with the defendant's Office of Institutional Equity, to which communication none of the addressees responded.

52.   On November 8, 2022, less than a week after he had received notice from the plaintiff that she would be filing a complaint with the Office of Institutional Equity, Irizzary initiated an investigation of the plaintiff's "performance and conduct during the Fall 2022 semester.  More specifically, it has been reported that [the plaintiff] leave[s] [her] ELDR 5015 class, scheduled Thursdays from 5:00pm to 7:30pm, approximately 30 minutes early every week." *Exhibit 8.*

53.   At no time prior to November 8, 2022, had Irizarry, or any other official of the defendant, ever raised a concern with the plaintiff's "performance and conduct during the Fall 2022 semester."

54.   It was only after the plaintiff had notified Irizarry, Burton and Cobb, that Irizarry commenced an investigation of the plaintiff's performance and conduct.

55.   The basis of Irizarry's charge relates to discretionary accommodations that Cobb had advised the plaintiff to employ for her students who work full-time jobs.

*Exhibit 8.*

56.   The underlying charge lodged by Irizarry against the plaintiff was no different from the discretionary accommodations employed by Cobb, a white male, with his full-time students for which he had not been subjected to an investigation, which led the plaintiff to inform Irizarry that she is "being subject[ed] to harassment and discrimination by being continuously held to different standards than those of my colleagues." *Plaintiff's Exhibit 8.*

57.   As a result of the retaliation, refusing to reappoint the plaintiff to the position of Assistant Professor, and subjecting her to a meritless investigation, to which she had been subjected by the defendant, the plaintiff experienced severe anxiety and depressive symptoms which required her, on the advice of her mental health care provider and her union representative, to take extended FMLA leave beginning on November 11, 2022

58.   On November 10, 2022, the plaintiff received a letter from Burton, dated November 10, 2022, informing her that Burton would also be voting not to reappoint the plaintiff to the position of Assistant Professor. *Exhibit 10.*

59.   Burton's letter, just as with the communication from McGarry on November 4, 2022, approximately one month after the committee had voted not to reappoint the plaintiff to the position of tenure track Assistant Professor, failed to follow the Promotion and Tenure Review procedures.

60.   As Burton acknowledged in an email to the plaintiff on October 3, 2022, Burton should have sent her letter, as the department head, to the plaintiff prior to meeting with the plaintiff to discuss the plaintiff's reappointment.

61.     Burton did not send her letter to the plaintiff concerning her decision to oppose the reappointment of the plaintiff to the position of tenure track Assistant Professor until nearly one month after she had met with the plaintiff, and after the plaintiff had already been informed by McGarry that the PTR Committee had decided not to reappoint her.

62.     In fact, Burton sent her letter to the plaintiff one night before the plaintiff, as Burton knew, had been scheduled to commence her FMLA leave on November 11, 2022. *Exhibit 11.*

63.     Prior to the complaint that the plaintiff filed against Burton with the Office of Institutional Equity, Burton had never raised any concerns with the plaintiff about her reappointment being in jeopardy.

64.     It was the plaintiff, after meeting with Burton and Irizarry on February 14, 2022, who raised fairness issues in an email to them with regard to their evaluation of her job performance, as well as the inherent bias of the evaluation process employed to assess her performance, which neither Burton nor Irizarry ever addressed. *Exhibit 12.*

65.     On December 7, 2022, the defendant's human resources department informed the plaintiff that her FMLA leave had been granted from November 11, 2022, to May 11, 2023.

66.     On or about April 1, 2023, Burton sent out a spreadsheet to all employees that showed the comparative salaries paid to the teachers in the plaintiff's Department. *Exhibit 9.*

67.     There  is one non-Black and one non-Black Hispanic full-time, tenure-tracked

coworkers, who were similarly situated to the plaintiff in all material respects, with similar or fewer credentials to the plaintiff, to whom the defendant had paid substantially more in compensation than what it paid to the plaintiff.

68.   There is a part-time, non-tenure tracked, White male coworker with fewer credentials than the plaintiff who earns substantially more than the plaintiff on a proportionate basis.

69.   The plaintiff was paid approximately one-third less than the defendant paid Cobb even though they shared substantially the same workload.

70.   The defendant subjected the plaintiff to discrimination in terms of her compensation and denied equal pay for equal work performed.

71.   As a result of the discrimination and harassment to which the defendant subjected the plaintiff, the plaintiff was forced to resign from her position as an Assistant Professor.

## VI.   FIRST CAUSE OF ACTION (Unlawful Employment Termination on account of the Plaintiff's Race and Color in Violation of Title VII of The Civil Rights Act Of 1964)

72-142.   The plaintiff incorporates as if re-alleged paragraphs 1 through 71.

143.   On May 12, 2023, the defendant, motivated by the plaintiff's race and color, constructively discharged the plaintiff from her employment as a tenure track Assistant Professor.

144.   The defendant discriminated against the plaintiff with malice and with a reckless indifference to the federally protected rights of the plaintiff guaranteed to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it constructively discharged the plaintiff.

145.  The defendant was motivated by plaintiff's race, and color when it constructively terminated the plaintiff's employment.

146.  The plaintiff was fully qualified and capable of performing the duties of a tenure track Assistant Professor.

147.  At the time of her constructive termination, the plaintiff had been performing her job duties in a capable manner.

148.  Because the plaintiff's race and color were motivating factors and made a difference in the decision by the defendant to constructively terminate the plaintiff's employment, the defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended.

149.  The defendant engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

150.  The defendant's termination of the plaintiff's employment constitutes unlawful race, and color discrimination.

151.  The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it constructively terminated the plaintiff's employment on account of her race, and color.

152.  As a result of the termination of the plaintiff's employment, the plaintiff has suffered economic losses, including loss wages and benefits.

153.  As a result of the termination of the plaintiff's employment, the plaintiff has suffered emotional distress.

**VII.** **SECOND CAUSE OF ACTION (Unlawful Refusal to Reappoint the Plaintiff to the Position of Assistant Professor on account of the Plaintiff's Race and Color in Violation of Title VII of The Civil Rights Act Of 1964)**

154-224.    The plaintiff incorporates as if re-alleged paragraphs 1 through 71.

225.    On November 4, 2022, the defendant, motivated by the plaintiff's race and color, informed the plaintiff for the very first time that it would not reappoint her to the position of tenure track Assistant Professor for the 2023-2024 academic year.

226.    The defendant discriminated against the plaintiff with malice and with a reckless indifference to the federally protected rights of the plaintiff guaranteed to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended.

227.    The defendant was motivated by plaintiff's race, and color when it refused to reappoint her to the position of tenure track Assistant Professor for the 2023-2024 academic year.

228.    The plaintiff was fully qualified and capable of performing the duties of a tenure track Assistant Professor.

229.    The plaintiff had been consistently performing her job duties in a capable manner when the defendant informed her that it would not reappoint her to the position of tenure track Assistant Professor for the 2023-2024 academic year.

230.    Because the plaintiff's race and color were motivating factors and made a difference in the decision by the defendant not to reappoint her to the position of tenure track Assistant Professor for the 2023-2024 academic year, the defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended.

231.    The defendant engaged in discrimination against the plaintiff with malice or

reckless indifference to the plaintiff's rights under Title VII of the Civil Rights

Act of 1964, as amended.

232.    The defendant's refusal to reappoint the plaintiff to the position of tenure track

Assistant Professor for the 2023-2024 academic year constitutes unlawful race,

and color discrimination.

233.    The defendant violated the provisions of Title VII of the Civil Rights Act of 1964,

as amended, when the defendant refused to reappoint her to the position of tenure

track Assistant Professor for the 2023-2024 academic year on account of her race,

and color.

234.    As a result of the defendant's refusal to reappoint the plaintiff to the position of

tenure track Assistant Professor for the 2023-2024 academic year, the plaintiff has

suffered economic losses, including loss wages and benefits.

235.    As a result of the defendant's refusal to reappoint the plaintiff to the position of

tenure track Assistant Professor for the 2023-2024 academic year, the plaintiff has

suffered emotional distress.

**VIII.   THIRD CAUSE OF ACTION (Unequal Compensation on account of the Plaintiff's Race, Color, and Gender in Violation of Title VII of The Civil Rights Act Of 1964)**

236-306.   The plaintiff incorporates as if re-alleged paragraphs 1 through 71.

307.    At the time of the plaintiff's hiring by the defendant as a tenure track Assistant

Professor, she was paid substantially less than Dr. Friedus and Dr. Chen.

308.    The plaintiff and Dr. Friedus, and Dr. Chen were similarly situated in all material

respects, professor rank and years of service.

309.    On the other hand, the plaintiff had a heavier workload than the other two
        professors.

310.    Furthermore, the plaintiff had the responsibility of remaking the doctoral
        curriculum specific to organizational theory, while neither Dr. Friedus nor Dr. Chen
        had similar responsibilities.

311.    Additionally, the plaintiff, who had no experience teaching race related courses,
        was required to assume that responsibility.

312.    The defendant engaged in policies and practices which willfully discriminated
        against the plaintiff on the basis of her race, color, and gender by paying her a
        substantially lower salary than that paid to her male, and non-Black co-workers,
        Dr. Friedus and Dr. Chen.

313.    The job skills, work effort and responsibilities of Dr. Chen and Dr. Friedus were
        not equal or greater to the job skills, work effort and responsibilities of the plaintiff.

314.    Additionally, although the plaintiff had been sharing a workload with Cobb, an
        Endowed Professor, and, at the same time, had been requested by the defendant to
        redesign the doctoral curriculum's sole offering in organizational studies for both
        the PhD and EdD programs, she was paid approximately one-third less than that
        paid to Cobb.

315.    The above acts of the defendant violate the provisions of Title VII of the Civil
        Rights Act of 1964, as amended.

316.    As a result of the defendant's unlawful actions, the plaintiff has suffered economic
        losses.

317.    Because of the unlawful actions of the defendant, the plaintiff has suffered

emotional distress.

IX.    **FOURTH CAUSE OF ACTION (Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended The Civil Rights Act Of 1964)**

318-388.   The plaintiff incorporates as if re-alleged paragraphs 1 through 71.

389.   The defendant has subjected the plaintiff to unlawful retaliation because the plaintiff informed the defendant that she would be filing a discrimination complaint against Burton and Cobb with the defendant's Office of Institutional Equity.

390.   As a result of voicing to Irizarry, Cobb, and Burton,  her opposition to the race, color and gender discrimination to which she was being subjected by the defendant, the defendant initiated a baseless investigation of her job performance, refused to reappoint her to the position of tenure track Assistant Professor, and constructively discharged her from her position of tenure track Assistant Professor.

391.   Because the plaintiff's opposition to the defendant's race and color discrimination was the determinative factor, the but-for cause, in the retaliatory actions to which the plaintiff was subjected by the defendant, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

392.   The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

393.   The plaintiff's vocal opposition to the discriminatory treatment to which she had been subjected by the defendant constitutes protected activity under the provisions of Title VII of the Civil Rights Act of 1964, as amended.

394.   The retaliatory actions to which the defendant subjected the plaintiff would deter a reasonable employee from making, filing, or supporting a claim of workplace discrimination.

395.   The plaintiff is now and will continue to suffer emotional distress as a direct result of the defendant's unlawful retaliation.

396.   The plaintiff has suffered economic injury as a direct result of the defendant's unlawful retaliation.

397.   The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful race, color, and gender discrimination when she complained about such acts to Burton, Cobb, and Irizarry.

398.   Because the plaintiff's opposition to the defendant's race, color, and gender discrimination was a determinative factor, the but-for cause, in the retaliation the defendant directed at the plaintiff, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

## X.   **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

(As to all causes of action)

    a.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended;

    b.   Require the defendant to reinstate the plaintiff to her position of tenure track Assistant Professor;

    c.   Award plaintiff the equitable relief of back pay and benefits, together with prejudgment interest for the entire period as well as front salary and benefits

accrual;

d.   Award plaintiff compensatory damages;

e.   Award plaintiff costs and attorney fees; and

f.   Grant such other and further relief as the Court may deem just and proper.

XI.   **JURY DEMAND**

**THE PLAINTIFF REQUESTS A TRIAL BY JURY**.

THE PLAINTIFF – TIFFANY BROWN

BY/s/ Thomas W. Bucci
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
1000 Bridgeport Avenue
Suite 501
Shelton, CT 06484
Tel: (203) 366-3939
Fax: (475) 269-2907
Email: thomaswbucci@outlook.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## <u>DISMISSAL AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/08/2023

**To:** Tiffany Brown
80 Haven Ave
New York, NY 10032

Charge No: 16A-2023-00940

EEOC Representative and email:   AMON KINSEY
Supervisory Investigator
Amon.Kinsey@EEOC.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: The Charging Party is pursuing another forum.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
11/08/2023
Timothy Riera
Acting District Director

**Cc:**

UCONN
c/o Kelly Bannister
9 Walters Ave., Unit 5075
Storrs, CT 06269

Thomas Borner
155 Providence St
Putnam, CT 06484

Please retain this notice for your records.



# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Tiffany Brown**
**COMPLAINANT**

vs.

CHRO No. 2340319
EEOC No. 16A20230940

**CONN., UCONN-Neag School of Education**
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:  October 27, 2023**

Tanya A. Hughes, Executive Director

cc:

      Complainant's Attorney: Thomas Bucci, Esq.
                    Willinger Willinger & Bucci PC
                    tbucci@wwblaw.com

      Respondent's Atty.:   Kelly Bannister, Esq.
                    Kelly.bannister@uconn.edu

      Case File



PLAINTIFF'S
EXHIBIT
**3**

![UCONN logo]
UNIVERSITY OF CONNECTICUT

# Appendix A

Tiffany Brown <tiffany.brown@uconn.edu>

---

## Fall email to EdD cohort

9 messages

---

**Cobb, Casey** <casey.cobb@uconn.edu>                                        Thu, Aug 18, 2022 at 11:41 AM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>

Hi Tiffany,

We are getting close to starting the semester; I can't believe it. I wanted to share a few things with you about the fall. As EdD coordinator I'm a little late getting an email out to the cohort, but pasted below is what I plan to send to them by tomorrow if not sooner. A few quick bits of information:

- One of our students, ⬛⬛⬛ is deaf and receives accommodations. The Center for Disabilities may have reached out to you or perhaps Jeff did himself. They make arrangements to have an ASL interpreter in class (or online when remote). They have been great to work with, as has Jeff. It helps if you can send the interpreter a ppt or even provide access to HuskyCT if you use it, so they review some terminology, etc. Again, they should in theory be reaching out to you.
- I had one of the Bridge students email me a few days ago asking about the possibility of holding the Aug 30th class remotely, due to her and two other students' concerns about making class on their first day of school. I didn't think of this and probably should have, but I also am not changing the schedule. Just making you aware the first day will be hectic and people will undoubtedly be late, as some travel from far and may not be able to leave school on time that day. In fact, expect throughout the semester 1-2 student invariably arrive late and are always apologetic. It's just the reality with their positions and emergencies come up.
- You'll see in the email below the routine for the back to back courses. Our courses are a little shorter than normal because of the back to back nature after they work all day. We give them a 30 minute break for dinner. So you're course will start at 4 and go to 6:15. Throw in a short break as you see fit. Then I pick them up at 6:45 and go to 9 pm.
- ⬛⬛⬛ emailed us a while ago about the new Bridge students. They will not have met the cohort so if you want to do an icebreaker, go for it. If you do something more regular like introductions, that works too. Maybe let me know if you plan to do anything special so I don't duplicate efforts.
- I'm attaching the up to date list of students in the cohort. One of the students, ⬛⬛⬛ asked yesterday to rejoin the cohort after a leave. I'm waiting on Morgaen's reply but I assume it's not a problem.
- Here is that email I plan to send out. Let me know if you see that I missed something:

Hi All,

I hope you are all doing well and were able to get some rest and relaxation this summer. There is still a little bit left 😊. Soon you will launch into Year 2 of the EdD. You are making great progress.

I'm writing with information on the two courses for which you should be registering. We made a switch on one of the courses on the master schedule – we are swapping 5202 and 6467. So these are the two fall courses:

EDLR 5202 Workplace Learning (Dr. Tiffany Brown)
EDLR 6465 Educational Administration Issues and Research (stuck with me again…requires a permission # for some reason, which Alyssa has sent you)



3/17/23, 2:02 PM                                    University of Connecticut Mail - Re: edlr 5202's scheduled remote sessions



# Appendix B  Tiffany Brown <tiffany.brown@uconn.edu>

## Re: edlr 5202's scheduled remote sessions
31 messages

**Cobb, Casey <casey.cobb@uconn.edu>**                                      Tue, Nov 1, 2022 at 9:04 AM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>, "Weiner, Jennie" <jennie.weiner@uconn.edu>

Dear Tiffany,
The most pressing issue appears to be the time slot you are teaching. I am more than willing to swap time slots the rest of the way. I have taught both the first and second Tuesday sessions since the EdD program started and am used to either one. Just say the word and send me your room number and we can start as early as today.

In the meantime in terms of remote classes I am planning to ask the class tonight specifically about Nov 8. Election Day can affect school schedules. So if they lean toward having difficulty getting here in person we can conceivably switch that to online. By my count we have 5 sessions left, one of which is already scheduled online. We have to be somewhat careful as some students have expressed preference for all in person.

Hope this helps.

Casey

Sent from my iPhone

> On Oct 29, 2022, at 11:40 AM, Brown, Tiffany <tiffany.brown@uconn.edu> wrote:
>
> Hi Casey -
>
> Condolences for your loss and I hope you and your family are doing alright.
>
> I need support for EDLR 5202. I talked with Laura last week about the scheduled remote dates and she let me know that she wasn't involved in the conversation in which the decision to offer remote courses was made.  When she mentioned that I should ask my EdD colleagues, I remembered that I wasn't made aware we were offering remote classes until you emailed to cross reference the dates you'd selected with me in August. I didn't receive an invite for the initial planning conversation.
>
> Anyhow, at this point the students and I both need more remote sessions this semester to better support their learning. You'll recall in August some wrote an email explaining how the current schedule conflicts with many of their work responsibilities. For most of this semester folks have arrived to my class between 15 minutes to an hour late (or not at all) because of various emergencies or urgent matters at the end of their work day. I was sick a week ago and had to change class to the remote option; two people who said they couldn't make the session initially were able to attend once the option was made available. There are folks who will have to miss upcoming classes (and course material related to their final papers) entirely because of work required travel. It's impacting them and my own pedagogical goals to have to hope that folks can make this class work into their schedule. They seem noticeably more engaged when they are settled in remotely rather than rushing to my class from work. I don't think you experience this because your class starts later in the evening.
>
> From my perspective- I hope you understand how demoralizing it is for me to travel without a car and get to campus ready to start class only to have most of them show up when they can (not blaming them at all). I have to spend $50 both ways to get from Hartford to Storrs every time I commute - that's excluding the cost of the Amtrak itself. There has been no cost of living adjustment to my salary, and I'm managing inflated costs of everything on pretty much the same salary as before this recession was set into motion. I'm not saying you can do anything about my salary, but having to delay paying some of my bills because my commute costs have increased is a challenge exacerbated by the fact that students are not able to be in class when it starts for various valid reasons. It's not fair to me or them, and it seems impractical for me to keep traveling to campus to begin with half a class or consistent lateness as students finish their workdays.
>
> I feel as though my teaching is not being well supported because no one seems to care that my class is scheduled at a time that's inconvenient for most of the students. Maybe I need to teach only masters' courses moving forward, but something has to give. I've asked other colleagues who recall teaching mostly masters classes in their first few years and thus not having to deal with the implications of the doctoral program's organizational issues (the ones we regularly focus

on in faculty meetings) in their early teaching experiences here. If the department values my teaching in the EdD program
it would help to show it by scheduling my courses at a time when folks aren't rushing from work as a start.
>
> Can I be part of the next conversation on EdD scheduling? Either way, I'm proposing that we make at least one or two
more of the sessions this semester remote as students have been asking for since August. I think I'll have no choice but to
do so considering my finances simply aren't flexible enough to continue with the $50 cabs only to arrive to partial
attendance.
>
> Thanks as always,
> Tiffany
>
>
> Sent from my iPhone
>

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Tue, Nov 1, 2022 at 12:53 PM
To: "Cobb, Casey" <casey.cobb@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>, "Weiner, Jennie" <jennie.weiner@uconn.edu>

Hi Casey -

This doesn't help, and I don't agree that the time slot is the issue. The issue is this time slot happens at the end of the
students' workday because most schools let out around 3-4 pm. Even folks in higher ed know this is still technically time
they are on the clock. I don't remember seeing a response to the students' email about the scheduling issue that was
addressed to you directly in August, but the issue remains. I think it's strange we are choosing to focus on some students'
preferences rather than the general consensus that this time was not well scheduled for the demographic of students
served by this program.

I don't live in CT and cannot afford to incur further costs to stay overnight and the last train leaves CT for NY at 7.59 pm.
Hence the $50 cabs to get to Harford right after class. I also don't think it would help to change the students' schedule
since they've got enough going on right now/it would add more uncertainty at a time no one needs it.

By my count, we have four classes left after today - one of which is remote. I still think we need at least one more for the
reasons I've mentioned. My plan was to survey the students in class today as well, so let's see what their preferences are.
My plan is to have them record their responses anonymously.

I'm absolutely not able to take your time slot, so I appreciate your helping to make this work for both the students and for
me.

Thank you,
Tiffany

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Tue, Nov 1, 2022 at 3:03 PM
To: "Cobb, Casey" <casey.cobb@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>, "Weiner, Jennie" <jennie.weiner@uconn.edu>

Hi again -

I just re-read one of Casey's emails from earlier this semester in which he foresaw that students would be regularly late to
my class:

- *I had one of the Bridge students email me a few days ago asking about the possibility of holding the Aug 30th class remotely, due to her and two other students' concerns about making class on their first day of school. I didn't think of this and probably should have, but I also am not changing the schedule. Just making you aware the first day will be hectic and people will undoubtedly be late, as some travel from far and may not be able to leave school on time that day. In fact, expect throughout the semester 1-2 student invariably arrive late and are always apologetic. It's just the reality with their positions and emergencies come up.*

I am coming from the perspective of making student-centered decisions. I hope you will support my efforts to do so despite this initial stance, as again - it's not fair to me or to them (I lecture in the first 30 minutes of class, so many regularly miss it).

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

**Cobb, Casey** <casey.cobb@uconn.edu>                                         Tue, Nov 1, 2022 at 3:09 PM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>, "Weiner, Jennie" <jennie.weiner@uconn.edu>

Why don't you pick another remote class. Let me know the date.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                                    Tue, Nov 1, 2022 at 3:14 PM
To: "Cobb, Casey" <casey.cobb@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>, "Weiner, Jennie" <jennie.weiner@uconn.edu>

Casey -

The problem is that you have known since before the semester started that students regularly cannot make my class on time and don't want to hold remote sessions to better serve their needs. You've ignored both their needs and mine (as an individual and as your colleague) by proposing we simply swap times knowing that the issue is arising because of a consistent timing conflict for the students.

I cannot join you in knowing that this does not work for them and choosing against their best interests. The students will get to vote today, because I want to know what they think. Depending on their responses (which I am happy to share), I will get back to you on the plan for how to best support them moving forward.

Tiffany

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut

17 responses

Summary          Question          Individual

Class 11 (11/8/22)                                    Copy
17 responses



Class 12 (11/15/22)                                   Copy
17 responses

Class 14 (12/6/22)                                    Copy
17 responses

Two people are missing, but as you can see there's an overwhelming majority. The results support that we should grant their request that the sessions on **11/8**and  **11/15** meet remotely.

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT06269

[Quoted text hidden]

**Burton, Laura** <laura.burton@uconn.edu>                         Wed, Nov 2, 2022 at 4:16 PM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>, "Cobb, Casey" <casey.cobb@uconn.edu>, "Weiner, Jennie"
<jennie.weiner@uconn.edu>

Hi, all.

After reviewing what has been shared, it makes sense to offer the Nov. 8th course remotely.

The final two classes (11/15 and 12/6) must meet in person.


If students have concerns, please have them contact me directly.


Laura

---

**From:** Tiffany Brown <tiffany.brown@uconn.edu>
**Date:** Tuesday, November 1, 2022 at 5:54 PM
**To:** Cobb, Casey <casey.cobb@uconn.edu>
**Cc:** Burton, Laura <laura.burton@uconn.edu>, Weiner, Jennie <jennie.weiner@uconn.edu>
**Subject:** Re: edlr 5202's scheduled remote sessions

As promised, the results of today's in-class poll (I stepped out of the room for 15 minutes and let the students discuss their options/vote on their own):



Two people are missing, but as you can see there's an overwhelming majority. The results support that we should grant their request that the sessions on **11/8** and **11/15** meet remotely.



17 responses

Summary          Question          Individual

Class 11 (11/8/22)
17 responses

Class 12 (11/15/22)
17 responses

Class 14 (12/6/22)
17 responses

Two people are missing, but as you can see there's an overwhelming majority. The results support that we should grant their request that the sessions on **11/8** and **11/15** meet remotely.

**Tiffany Brown, Ph.D.**

Assistant Professor

Department of Educational Leadership

Neag School of Education

University of Connecticut

249 Glenbrook Road, Unit 3093

Storrs, CT 06269

On Tue, Nov 1, 2022 at 4:16 PM Tiffany Brown <tiffany.brown@uconn.edu> wrote:

Alrighty, I'll forward your email to the students.

**Tiffany Brown, Ph.D.**

Assistant Professor

Department of Educational Leadership

Neag School of Education

University of Connecticut

249 Glenbrook Road, Unit 3093

Storrs, CT 06269

On Wed, Nov 2, 2022 at 5:55 PM Burton, Laura <laura.burton@uconn.edu> wrote:

Hi, all.

After reviewing what has been shared, it makes sense to offer the Nov. 8th course remotely.

The final two classes (11/15 and 12/6) must meet in person.

If students have concerns, please have them contact me directly.

Laura

**From:** Tiffany Brown <tiffany.brown@uconn.edu>
**Date:** Tuesday, November 1, 2022 at 5:54 PM
**To:** Cobb, Casey <casey.cobb@uconn.edu>
**Cc:** Burton, Laura <laura.burton@uconn.edu>, Weiner, Jennie <jennie.weiner@uconn.edu>
**Subject:** Re: edlr 5202's scheduled remote sessions

As promised, the results of today's in-class poll (I stepped out of the room for 15 minutes and let the students discuss their options/vote on their own):



**Brierley, Kristen** <kristen.brierley@uconn.edu>                    Thu, Nov 3, 2022 at 2:57 PM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>

Good afternoon,

# Appendix C

I am in receipt of your below emails and understand that you also spoke with our administrative assistant earlier this week seeking assistance.  If you believe that you are being subjected to a hostile work environment or other prohibited conduct based on your membership in a protected class, I encourage you to contact the Office of Institutional Equity to make a report or formal complaint.  More information about how to do so can be found here: https://equity.uconn.edu/reporting-form/.

Decisions about course modality and timing are matters of academic concern that should be addressed through your departmental leadership.

Thank you,

Kristen

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Thu, Nov 3, 2022 at 4:59 PM
To: "Burton, Laura" <laura.burton@uconn.edu>, "Cobb, Casey" <casey.cobb@uconn.edu>
Cc: "Irizarry, Jason" <jason.irizarry@uconn.edu>

Hey Laura -

Just a heads up re: the response I got from Labor Relations today (below). I've filed a complaint with the Office of Institutional Equity that names you and Casey based on my experiences of you both setting a hostile workplace environment through the enactment of passive workplace aggression (borderline bullying) with regards to your handling of the EDLR 5202 situation last night. I'll be discussing with them the impact of your continued microaggressions towards me on my work since the start of my time here with reference to some of the research you've done on the topic regarding black female experiences in particular.

My perspective is that yesterday's interaction was an escalation of the passive aggression/discrimination I've experienced since last Spring when you tried to rationalize assigning me to the social justice leadership class even though Alex had also been hired for the same position and literally describes herself as a race and class scholar. I've also been in touch with the Provost's office about your choice to ignore the student data collected on Tuesday night.

Thinking ahead to our upcoming departmental meetings, I'm writing this because I want you to understand why I will be present but likely won't participate in them - because it's clearer than ever that departmental leaders don't value my voice here and I wouldn't want to keep trying in vain. I simply don't know how to work with folks who refuse to share professional respect for their colleagues. Besides that, talking with either you or Casey on my own would be extremely uncomfortable for me because the evidence suggests neither of you are assigning, evaluating, or managing my work objectively.

Thank you,

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT06269



Sent from my iPhone

# Appendix D

Begin forwarded message:

**From:**"Brown, Tiffany" <tiffany.brown@uconn.edu>
**Date:** November 4, 2022 at 19:10:09 EDT
**To:**"McGarry , Jennifer" <jennifer.mcgarry@uconn.edu>
**Cc:** "Stewart, Saran" <saran.stewart@uconn.edu>, "Nienhusser, H. Kenny"
<h._kenny.nienhusser@uconn.edu>
**Subject: Re: PTR Review**

Hi all -

When someone is able will you explain the implications of this meeting? Not sure what I should be prepared
to share in this next meeting or if it will be with the same folks as before.

Have a good weekend,

Tiffany

Sent from my iPhone

On Nov 4, 2022, at 17:07, McGarry, Jennifer <jennifer.mcgarry@uconn.edu> wrote:

Dear Tiffany:

As chair of the EDLR PTR Committee, I am informing you of the negative findings regarding
your reappointment. I have attached the letter from the Committee that you have previously
read, now including the vote.

Per the Provost's Office guidelines, the Committee is providing you with the opportunity to
meet to discuss our findings:

The Committee, after its review, shall provide the faculty member with an opportunity
to appear before the committee to discuss substantive negative findings
(https://provost.uconn.edu/faculty-and-staff-resources/promotion-tenure-
reappointment/).

Please provide days/times you are available to meet during the week of November 7, either in
person or virtually.

Jennie

<PTR_Tiffany Brown_Vote.pdf>

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                                Fri, Nov 4, 2022 at 7:54 PM
To: David Amdur <DavidAmdur@uconnaaup.org>

Alright, let me share the letter. It's not a completely accurate description of my conversations with the committee (and may in fact reflect a private conversation I had with a PTR committee member one day when he offered to drive me home), but here it is.

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

📄 **PTR_Tiffany Brown_Vote.pdf**
235K

---

**David Amdur** <DavidAmdur@uconnaaup.org>                                Fri, Nov 4, 2022 at 8:32 PM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>

*Message sent from a system outside of UConn.*

*Message sent from a system outside of UConn.*

Tiffany,

Thank you for this. Was today (11-4-22) the first time you saw this letter and knew the PTR cmte was recommending non-reappointment? I note the letter is dated almost a month ago, October 5, 2022, so did it take a month for them to let you know their decision? I also noted that Casey Cobb is on the PTR cmte but is listed as absent. Was this related to his father's passing? Did he participate in any meeting you had with the committee? I'd be curious if he participated in their deliberations? It seems from the vote tally he was listed as absent, so that could make me think he didn't participate, but I am curious. Do you know what Laura Burton's separate recommendation is as department head? Has she shared her letter with you? Sorry, it's Friday night and I am asking you a lot of questions, but they're coming to mind.

PLAINTIFF'S
EXHIBIT
ALL-STATE LEGAL®
7

October 5, 2022

Dr. Laura Burton
Department Head
Department of Educational Leadership
Neag School of Education

Dear Dr. Burton,

The Department of Educational Leadership (EDLR) Faculty Promotion and Tenure Review (PTR) Committee has reviewed Dr. Tiffany Brown's submitted materials for consideration for reappointment as an Assistant Professor in the Department of Educational Leadership. Two members of the Committee (Drs. Saran Stewart and Jennie McGarry) met with Dr. Brown on October 5, 2022 to discuss her dossier and to address questions she had about the PTR process.

We discussed the gaps in information on Dr. Brown's PTR form and encouraged her to update the form, as faculty can update their PTR materials throughout the review process. Dr. Brown shared an addendum (see file in supporting materials folder in shared drive) with us. We also discussed what the PTR Committee can do better to support faculty preparation for the review process as well as how we can support faculty accessing resources that can assist them in progressing toward tenure and promotion. As a result of that conversation, Dr. Stewart shared examples of teaching statements with Dr. Brown.

Below is a summary of our review of Dr. Brown's materials, including the addendum, and our discussion with her on October 5.

**Scholarship**

We began the conversation with Dr. Brown by asking if there have been any additional developments in her scholarship since she completed the PTR form in late August. She provided us with an update of the book proposal she has in review with Cambridge University Press, titled *Cultural Learning in Urban Schools and Minority Serving Institutions: For Educators.* Originally, she had submitted individual papers from her dissertation (please note these are the two papers submitted for publication on the PTR form), presented the work at AERA, and received feedback leading her to combine the papers/presentations into a book proposal. We encouraged her to continue to submit peer-reviewed papers while she is working on the book since those will have impact sooner than the book, and for tenure she will need to show that impact and her trajectory beyond tenure. She acknowledged our advice and shared that she has two manuscripts in progress based on data collected in 2017 from a high-performing higher education opportunity program. The papers are about professional socialization and essential components of the program's service delivery. We advised her to document the two papers on her PTR form as works in progress as well as encouraged her to provide samples of the work in the supporting materials folder. Her goal is to submit both papers by the end of Fall 2022.

Dr. Brown acknowledged that she has a different sense of how to use her negotiated course release time (0:1 load for 2021-22) last year and feels that she is making progress in her scholarly pursuits. She also shared that she is gaining a better understanding of where her work belongs and spoke of organizational psychology journals.

Dr. Brown has not indicated any proposal submissions for internal or external funding.

Finally, we had the opportunity to clarify Dr. Brown's understanding of the expectations for promotion, tenure and reappointment related to the publication of peer-reviewed journal articles, or other scholarly products. She shared that she had been told that the expectation was two submissions per year, not two accepted or published products. We've included an excerpt from the Neag School Faculty Roles and Responsibilities (p. 21) that speaks to the expectation for publications here:

> Although the Neag School does not have as a metric [related to] the total number of products a tenure-earning faculty is expected to generate, the advice is typically given that tenure-earning faculty generate on average two peer-reviewed products per year, including manuscripts that are in-press.

**Teaching**

Dr. Brown expressed that last year was hard for everyone, and particularly for her as a new female faculty member of color. The recent LLEP meeting helped her understand more about possible improvements to the program and connected with some of the concerns she heard from students last year in EDLR 5204: Organizational Learning. Dr. Brown provided her SET scores from Spring 2022 (EDLR 5204) and should also speak explicitly to her negotiated course release for Fall 2021 and Spring 2022 to account for only SET scores for one course. Her EDLR 5204 SET scores were notably low and she expressed that the PTR form and the SET did not address systemic issues impacting her and the students she taught. We spoke about potential SET+ options for Dr. Brown including formative assessments in her courses, the National Center for Faculty Diversity and Development, and inviting a colleague to observe and provide feedback on her teaching. Specifically, we suggested that Dr. Brown should share anonymized concept maps and memos that the students submit as evidence of their learning in her courses. We also recommended that Dr. Brown re-write her teaching statement and integrate information about how she approaches teaching and learning including identifying  the mentors and scholars who have informed her teaching. While Dr. Brown has expressed her dissatisfaction with teaching and learning resources available through CETL, she shared that the Women of Color in the Academy conference she attended in the spring was beneficial. She acknowledged that she has engaged colleagues she met at the conference about course materials and course structure. Dr. Brown feels the Fall 2022 semester is going better for her and the students in her course because she has scaled back her expectations and is adapting to students' needs in real time. She is using course objectives that have been used before rather than trying to create them herself as she recognizes that she is still learning about the program objectives and how each class fits in.

**Service**

In our conversation with Dr. Brown, we learned that while she is not being asked to serve on department, school, or university committees as a new, pre-tenure faculty member, she has engaged in program level service.  She served on EdD committees last fall for the following students: Micah Heumann, Elsie Torres, Malik Champlain, Rebecca Aldred, India Monroe, and Patty King. Additionally, external to UConn, Dr. Brown has served as a reviewer for Educational Research Review and Contemporary Educational Psychology.

In summary, Dr. Brown has been asked to revise her PTR form to reflect her scholarship, teaching, and service to date. Related to scholarship, Dr. Brown does not have any published, accepted or in press manuscripts to date. She is awaiting notification of the status of a submitted book proposal. With teaching, Dr. Brown has been advised to revise her teaching statement to reflect her pedagogical process,  teaching philosophy, goals relative to instructional responsibilities and activities undertaken to enhance teaching. The committee has also requested that Dr. Brown add language to her PTR form to account for her negotiated course release in Fall 2021 and Spring 2022. Lastly, based on the addendum Dr. Brown submitted following her meeting with the PTR committee representatives, there is an indication of program-level and professional association service. We also made specific recommendations and clarifications related to her scholarship, teaching, and service.

With a vote of 0 yes, 3 no, 0 abstain, and 1 absent the Department of Educational Leadership PTR Committee does not recommend that Dr. Tiffany Brown be reappointed to the position of Assistant Professor.

Sincerely,

Dr. Jennifer McGarry

_____

Dr. H. Kenny Nienhusser

_____

Dr. Saran Stewart

(absent)
_____

Dr. Casey Cobb



**UCONN**
UNIVERSITY OF CONNECTICUT

# Appendix E

Tiffany Brown <tiffany.brown@uconn.edu>

---

## Notice of Fact-Finding Meeting
4 messages

---

**Irizarry, Jason** <jason.irizarry@uconn.edu>                    Tue, Nov 8, 2022 at 10:05 AM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>
Cc: "Bannister, Kelly" <kelly.bannister@uconn.edu>, David Amdur <DavidAmdur@uconnaaup.org>


Dear Professor Brown:


A fact-finding meeting has been scheduled with you on Wednesday, November 16, 2022, at 10:00am, via WebEx. You will be provided with credentials to access the meeting.

The purpose of this meeting is to discuss concerns regarding your performance and conduct during the Fall 2022 semester. More specifically, it has been reported that you leave your EDLR 5015 class, scheduled for Thursdays from 5:00pm to 7:30pm, approximately 30 minutes early every week.

These behaviors, if true, may violate University policies including, but not limited to, the *General Rules of Conduct*. They also may demonstrate neglect of assigned responsibilities, failure to fulfill professional commitments, and/or conduct which impairs the rights of students.

In order to conduct a thorough and objective investigation, I would like to meet with you to discuss these allegations in greater detail and to provide you the opportunity to respond and offer documents or other evidence you deem relevant. In the interim, please take a moment to review the University's *Non-Retaliation Policy*, a copy of which can be found here: https://policy.uconn.edu/2011/05/24/non-retaliation-policy/. Because of the nature of this meeting, you are entitled to AAUP representation, and your union has been copied on this correspondence. A representative from the Office of Faculty and Staff Labor Relations also will be present.

If you are unable to attend, please notify me promptly. If you fail to respond or do not appear, we will proceed based on the information available to us at this time.

Respectfully,

*[signature]*

**Jason G. Irizarry, Ed.D.**

Dean and Professor
Neag School of Education | University of Connecticut
249 Glenbrook Rd, U-3064, Storrs, CT 06269-3064
Office: 860.486.3815 | education.uconn.edu


cc:    Kelly L. Bannister, Associate Director, Office of Faculty & Staff Labor Relations

        David Amdur, Associate Director, AAUP-UConn

**PRIVILEGED AND CONFIDENTIAL COMMUNICATION**: The information contained in this electronic message and any attachments to it are intended for the _exclusive use of the addressees_ and may contain confidential attorney-client communication and/or privileged information. If you are not the intended recipient, please destroy all copies of this message and attachments and immediately notify this office by sending a reply e-mail to the sender. Thank you.

**From:** Brown, Tiffany <tiffany.brown@uconn.edu>
**Sent:** Tuesday, November 8, 2022 10:25 AM
**To:** Irizarry, Jason <jason.irizarry@uconn.edu>
**Cc:** Bannister, Kelly <kelly.bannister@uconn.edu>; David Amdur <DavidAmdur@uconnaaup.org>; Chipman, Sarah <sarah.chipman@uconn.edu>
**Subject:** Re: Notice of Fact-Finding Meeting

Hi Jason -

Thanks for this email. Before we meet, will you explain on this thread how what I am being accused of is any different than what Casey has instructed me to do in order to accommodate his class schedule as described in this email from August of this year in which he discretionarily decided to cut my class short to accommodate his mistake in scheduling the EdD courses?

- I had one of the Bridge students email me a few days ago asking about the possibility of holding the Aug 30th class remotely, due to her and two other students'concerns about making class on their first day of school. I didn't think of this and probably should have, but I also am not changing the schedule. Just making you aware the first day will be hectic and people will undoubtedly be late, as some travel from far and may not be able to leave school on time that day. In fact, expect throughout the semester 1-2 student invariably arrive late and are always apologetic. It's just the reality with their positions and emergencies come up.

- You'll see in the email below the routine for the back to back courses. Our courses are a little shorter than normal because of the back to back nature after they work all day. We give them a 30 minute break for dinner. So you're course will start at 4 and go to 6:15. Throw in a short break as you see fit. Then I pick them up at 6:45 and go to 9 pm.

I ask because I'm currently speaking with the OIE about my perception that I am being subject to harassment and discrimination by continuously being held to different standards than those of my colleagues.

Thank you,

Tiffany

Sent from my iPhone

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                        Tue, Nov 8, 2022 at 12:26 PM
To: "Irizarry, Jason" <jason.irizarry@uconn.edu>
Cc: "Bannister, Kelly" <kelly.bannister@uconn.edu>, David Amdur <DavidAmdur@uconnaaup.org>, "Chipman, Sarah"
<sarah.chipman@uconn.edu>

Hi Jason -

I would also like to note having reviewed the Non-Retaliation Policy that this Notice does feel retaliatory in and of itself. I
cc'd you on the emails I sent to Laura and Casry last week in which they chose to violate the policies you described in
your email - with no intervention on your part. It doesn't feel coincidental that this email is coming after you learned of my
intent to file an OIE complaint, or as the PTR committee has recently recommended that I not be re-appointed.

Thank you,

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                        Tue, Nov 8, 2022 at 1:32 PM
To: tiffanybrownphd@gmail.com

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

            Sender notified by
            Mailtrack

3/17/23, 3:05 PM                           University of Connecticut Mail - RE: Notice of Fact-Finding Meeting



Tiffany Brown <tiffany.brown@uconn.edu>

## RE: Notice of Fact-Finding Meeting

**Bannister, Kelly** <kelly.bannister@uconn.edu>                                        Tue, Nov 8, 2022 at 3:38 PM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>, "Irizarry, Jason" <jason.irizarry@uconn.edu>
Cc: David Amdur <DavidAmdur@uconnaaup.org>, "Chipman, Sarah" <sarah.chipman@uconn.edu>

Professor Brown,

The letter sent to you by Dean Irizarry is to advise you of an investigatory meeting. The Dean is gathering information and no decisions have been made. At this stage in the process, the Dean is not required to answer questions. Your AAUP representative, David Amdur, is copied here and can advise you about the fact-finding process. If there is information you would like to share with the Dean related to the matters identified in the letter, David can advise you on how to do so.

To the extent you have raised issues of potential harassment, discrimination and/or retaliation, I see that you have copied on your emails today Sarah Chipman in OIE who can advise you about their processes.

Thanks,

Kelly

**Kelly L. Bannister, Esq.**

Associate Director and Labor & Employment Attorney

Office of Faculty & Staff Labor Relations

University of Connecticut

9 Walters Avenue, Unit 5075

Storrs, Connecticut 06269-5075

Tel: (860) 486-2585 (direct)

Tel: (860) 486-5684 (main)

Fax: (860) 486-3390

kelly.bannister@uconn.edu

www.lr.uconn.edu

PLAINTIFF'S
EXHIBIT
9
ALL-STATE LEGAL

| Academic : | Academic | Full Name | TT/NTT | Rank Desc | Faculty Ro | Affiliated I | Union Nan | Empl Class | Payroll FTE |
|---|---|---|---|---|---|---|---|---|---|
| Education | Educationa | Brown,Tiff | TT | Assistant P | Faculty | | UConn - Fa | UConn Per | 1 |
| Education | Educationa | Burton,Lau | TT | Professor | Dept Head/Director | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Castillo-Mc | TT | Associate I | Faculty | | UConn - Fa | Tenured | 0.5 |
| Education | Educationa | CHEN,CHEI | TT | Assistant P | Faculty | | UConn - Fa | UConn Per | 1 |
| Education | Educationa | Cobb,Case | TT | Professor | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | DeRosa,Da | NTT | Visiting Ins | Faculty | | UConn - Fa | Durational | 1 |
| Education | Educationa | Donaldson | TT | Professor | Associate Dean | | Manageria | Permanent | 1 |
| Education | Educationa | Evanovich, | NTT | Associate ( | Faculty | | UConn - Fa | Durational | 1 |
| Education | Educationa | Freidus,Ale | TT | Assistant P | Faculty | | UConn - Fa | UConn Per | 1 |
| Education | Educationa | Green,Pres | TT | Professor | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Grenier,Ro | TT | Professor | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Lyman,Kell | NTT | Lecturer | Faculty | | UConn - Fa | Durational | 0.5 |
| Education | Educationa | Mccready,. | NTT | Assistant P | Faculty | | UConn - Fa | Durational | 1 |
| Education | Educationa | McGarry,Je | TT | Professor | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Nienhusse | TT | Associate I | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Stewart,Sa | TT | Associate I | Faculty | | UConn - Fa | Tenured | 1 |
| Education | Educationa | Weiner,Jer | TT | Associate I | Faculty | | UConn - Fa | Tenured | 1 |

| Faculty Ba | Appointm | Faculty Base (L | Additional 1 | Additional 2 | Admin Supple | Full Time Annu |
|---|---|---|---|---|---|---|
| 9 | 9 | $ 80,730.00 | $- | $- | $- | $ 80,730.00 |
| 9 | 10 | $ 150,870.00 | $ 16,764.00 | $- | $ 11,520.00 | $ 179,154.00 |
| 9 | 9 | $ 122,809.00 | $- | $- | $- | $ 122,809.00 |
| 9 | 9 | $ 81,680.00 | $- | $- | $- | $ 81,680.00 |
| 9 | 9 | $ 194,566.00 | $- | $- | $- | $ 194,566.00 |
| 9 | 9 | $ 76,661.00 | $- | $- | $- | $ 76,661.00 |
| 9 | 12 | $ 143,134.00 | $- | $- | $ 63,384.00 | $ 206,518.00 |
| 9 | 9 | $ 89,163.00 | $- | $- | $- | $ 89,163.00 |
| 9 | 9 | $ 86,338.00 | $- | $- | $- | $ 86,338.00 |
| 9 | 9 | $ 254,122.00 | $- | $- | $- | $ 254,122.00 |
| 9 | 9 | $ 107,366.00 | $- | $- | $- | $ 107,366.00 |
| 9 | 9 | $ 40,000.00 | $- | $- | $- | $ 40,000.00 |
| 9 | 9 | $ 84,934.00 | $- | $- | $- | $ 84,934.00 |
| 9 | 9 | $ 171,324.00 | $- | $- | $- | $ 171,324.00 |
| 9 | 10 | $ 101,954.00 | $ 11,328.00 | $- | $- | $ 113,282.00 |
| 9 | 11 | $ 108,935.00 | $- | $ 24,208.00 | $- | $ 133,143.00 |
| 9 | 9 | $ 121,930.00 | $- | $- | $- | $ 121,930.00 |

| Academic | Academic Full Name TT/NTT | Rank Desc | Faculty/Bo Affiliated U | Union Not Empl Class | Payroll | TTT | Faculty 9k Appointm. | Faculty Base U. | Additional 1 U. | Additional 2 U. | Admin Suppl. | Full Time Annu. | 9-mo Equivale | 9-mo Equivale | Years of S | Asst Prof Year | Assoc Prof Year | Prof Year | Years in Rank |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Education Education | Brown,Tiff TT | Assistant | Faculty | UConn + FI UConn Per | 1 | 9 | 9 | $ 86,730.00 | $ 80,730.00 | $- | $- | $- | $ 80,730.00 | $ 80,730.00 | 1 | 2021 | | | 1 |
| Education Education | Barton,La TT | Professor | Dept Head/Director | UConn + FI Tenured | 0.5 | 9 | 10 | $ 180,870.00 | $ 179,334.00 | $ 11,520.00 | $- | $- | $ 191,394.00 | $ 180,870.00 | 18 | 2004 | 2010 | 2018 | 4 |
| Education Education | Castillo+A TT | Associate | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 152,470.00 | $ 152,470.00 | $- | $- | $- | $ 152,470.00 | $ 152,470.00 | 9 | 2014 | 2021 | | 1 |
| Education Education | CHEN,CH TT | Assistant | Faculty | UConn + FI UConn Per | 1 | 9 | 9 | $ 123,809.00 | $ 123,809.00 | $- | $- | $- | $ 123,809.00 | $ 123,809.00 | 9 | 2021 | | | 1 |
| Education Education | Cobb,Cor TT | Professor | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 81,600.00 | $ 81,600.00 | $- | $- | $- | $ 81,600.00 | $ 81,600.00 | 19 | 2003 | | | 10 |
| Education Education | DeRosa,Da NTT | Professor | Faculty | UConn + FI Durational | 1 | 9 | 9 | $ 194,566.00 | $ 194,566.00 | $- | $- | $- | $ 194,566.00 | $ 194,566.00 | 15 | 2006 | 2012 | | |
| Education Education | Vellosa,N NTT | Visiting | Faculty | UConn + FI Durational | 1 | 9 | 9 | $ 76,661.00 | $ 76,661.00 | $- | $- | $- | $ 76,661.00 | $ 76,661.00 | 2 | | | | |
| Education Education | Donaldson TT | Professor | Associate Dean | UConn + FI Tenured | 1 | 12 | 3 | $ 143,134.00 | $ 206,519.00 | $- | $- | $ 63,384.00 | $ 206,519.00 | $ 143,134.00 | 14 | 2008 | 2014 | 2020 | 2 |
| Education Education | Evans,Rob,NTT | Associate | Faculty | UConn + FI Durational | 1 | 9 | 9 | $ 89,153.00 | $ 89,153.00 | $- | $- | $- | $ 89,153.00 | $ 89,153.00 | 12 | 2014 | 2022 | | 0 |
| Education Education | Fretko,A TT | Assistant | Faculty | UConn + FI UConn Per | 1 | 9 | 9 | $ 86,338.00 | $ 86,338.00 | $- | $- | $- | $ 86,338.00 | $ 86,338.00 | 1 | 2021 | | | 1 |
| Education Education | Green,Pre TT | Professor | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 254,122.00 | $ 254,122.00 | $- | $- | $- | $ 254,122.00 | $ 254,122.00 | 9 | | | 2013 | 9 |
| Education Education | Green,C.Be TT | Professor | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 107,366.00 | $ 107,366.00 | $- | $- | $- | $ 107,366.00 | $ 107,366.00 | 17 | 2005 | 2011 | 2021 | 1 |
| Education Education | Lynam,Kri NTT | Lecturer | Faculty | UConn + FI Durational | 0.5 | 9 | 9 | $ 40,000.00 | $ 40,000.00 | $- | $- | $- | $ 40,000.00 | $ 40,000.00 | 0 | 2019 | | | |
| Education Education | Mazersky, NTT | Assistant | Faculty | UConn + FI Durational | 1 | 9 | 9 | $ 84,934.00 | $ 84,934.00 | $- | $- | $- | $ 84,934.00 | $ 84,934.00 | 3 | 2019 | | | 3 |
| Education Education | McGarry,N TT | Professor | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 171,324.00 | $ 171,324.00 | $- | $- | $- | $ 171,324.00 | $ 171,324.00 | 20 | 2002 | 2008 | 2014 | 1 |
| Education Education | Newhouse TT | Associate | Faculty | UConn + FI Tenured | 1 | 9 | 10 | $ 101,954.00 | $ 113,282.00 | $ 11,328.00 | $- | $- | $ 113,282.00 | $ 101,954.00 | 4 | 2018 | 2021 | | 1 |
| Education Education | Stewart,Sa TT | Associate | Faculty | UConn + FI Tenured | 1 | 9 | 11 | $ 108,915.00 | $ 131,143.00 | $- | $- | $ 24,209.00 | $ 131,143.00 | $ 108,915.00 | 2 | 2021 | 2020 | | 2 |
| Education Education | Yeseri,An TT | Associate | Faculty | UConn + FI Tenured | 1 | 9 | 9 | $ 121,930.00 | $ 121,930.00 | $- | $- | $- | $ 121,930.00 | $ 121,930.00 | 9 | 2013 | 2019 | | 3 |

PLAINTIFF'S
EXHIBIT
10



# UCONN
## UNIVERSITY OF CONNECTICUT

November 10, 2022

Dean Jason Irizarry
Dean's Advisory Committee, PTR

Dear Dean Irizarry,

Dr. Tiffany Brown has submitted her PTR materials for review as she begins her second year as an Assistant Professor in Educational Leadership. Dr. Brown joined the Neag School of Education in fall of 2021.  In my role as Department Head, I have reviewed Dr. Brown's submitted materials and the letter provided to me by the Department of Educational Leadership Promotion, Tenure, and Review committee.  I also met with Dr. Brown on Monday, October 17, 2022 to discuss her progress toward promotion and tenure.

Teaching

Dr. Brown shared in her teaching philosophy statement that she does not feel she has had enough time teaching to be able to develop a teaching philosophy. Dr. Brown also noted that she perceived a lack of "social, institutional, or organizational supports for the unique challenges faculty of color experience in the classroom".  Dr. Brown received two course releases in the fall 2021 semester to support her scholarly activities. In the spring of 2022, Dr. Brown taught EDLR 5204 Organizational Learning for students in the LLEP doctoral program. She also received one course release in the spring of 2022 to support her scholarly activities.

One measure of success in teaching is captured by student evaluations of teaching (SETs). And on this measure, in EDLR 5204 (spring 2022) Dr. Brown received scores of 1.4 (1 – 5 scale) for overall rating of instructors teaching and 1.8 (1 – 5 scale) on overall rating of the course.

Dr. Brown did not share evidence of development of her teaching in her PTR materials but noted in our meeting that she has implemented new structures into her instruction for her fall 2022 courses including shortening her lectures, conducting more in-class group discussions, and providing updated readings. Dr. Brown noted she also now seeking feedback from her students earlier in the semester. Dr. Brown is encouraged to continue to develop and share evidence of teaching excellence (formerly SET+) and to utilize the many resources available through the Center for Excellence in Teaching (CETL), through engagement with colleagues in the department, and the resources shared through the office of the Associate Dean for Academic Affairs in the Neag School.

Neag School of Education
**Department of Educational Leadership**
249 GLENBROOK ROAD, UNIT 3093
STORRS, CT 06269-3093
PHONE 860.486.6278
FAX 860.486.4028
www.edlr.uconn.edu

An NCATE Accredited Institution

An Equal Opportunity Employer

Scholarship

Dr. Brown indicated on her PTR form that she submitted two manuscripts, one in January of 2022 and one in February of 2002. Based on feedback she has received from the two manuscripts submitted in spring of 2022, Dr. Brown indicated she has taken that feedback and submitted a book proposal "Cultural Learning in Urban Schools and Minority Serving Institutions: For Educators" that is under review at Cambridge University Press. Dr. Brown also noted that she is developing two manuscripts for submission that are based on data collected during her dissertation work from 2017.

In our meeting, Dr. Brown noted she believed she was misinformed regarding expectations for scholarly activity for tenure-track faculty members and that the EDLR PTR committee had clarified the expectations for scholarly activity during their meeting with her. In our meeting, I reiterated the expectations for tenure-track faculty members and share below here the information noted in the Neag School of Education Roles and Responsibilities Document, "the advice is typically given that tenure-earning faculty generate on average two peer-reviewed products per year, including manuscripts that are in-press. This advice represents a heuristic, not an algorithm."

Dr. Brown did not indicate that she has submitted any proposals for internal or external funding to support her scholarship.

Service

In the fall of 2021, Dr. Brown served on the EdD program capstone proposal committee for six EdD students. Dr. Brown also provided a review of courses for the EdD program during fall of 2022. Dr. Brown noted she has served as an ad-hoc reviewer for Educational Research Review and Contemporary Educational Psychology.

Summary

Dr. Brown has not made meaningful or significant progress toward promotion and tenure as evidenced in the PTR materials shared and as noted in the evaluation of those materials by the Department Promotion, Tenure, and Review Committee. As such, I do not support Dr. Brown for reappointment as an Assistant Professor on the tenure-track.

Sincerely,

Laura J. Burton
Professor, Sport Management
Department Head

Neag School of Education
**Department of Educational Leadership**
249 GLENBROOK ROAD, UNIT 3093
STORRS, CT 06269-3093
PHONE 860.486.6278
FAX 860.486.4028
www.edlr.uconn.edu                    An NCATE Accredited Institution                    An Equal Opportunity Employer



PLAINTIFF'S EXHIBIT 11 ALL-STATE LEGAL®

UCONN
UNIVERSITY OF CONNECTICUT

Tiffany

## PTR Letter

**Burton, Laura** <laura.burton@uconn.edu>
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>

Tiffany,

See attached the Dept Head PTR evaluation letter.

You have an opportunity to schedule a meeting with me to discuss this letter. Please reach out to me by November 18th to schedule a meeting to discuss the letter.

Best,

Laura

**Laura J. Burton**
Department Head, Educational Leadership

Professor, Sport Management

Pronouns (she, her, hers)

**University of Connecticut**

**Neag School of Education**
Dept. of Educational Leadership
249 Glenbrook Road Unit 3093
University of Connecticut
Storrs, CT 06269-3093
(860) 486-3095

http://education.uconn.edu/person/laura-burton/

Women In Sport Leadership

Organizational Behavior in Sport Management

*I acknowledge that the land on which the University of Connecticut is located is the territory of the Mohegan, Mashantucket Pequot, Eastern Pequot, Schaghticoke, Golden Hill Paugussett, Nipmuc, and Lenape People*
*of this land and have stewarded this land throughout the generations.*

📄 **Brown_Letter_DH.pdf**

PLAINTIFF'S
EXHIBIT
12
ALL-STATE LEGAL



Tiffany Brown <tiffany.brown@uconn.edu>

---

## Meeting today
12 messages

---

**Irizarry, Jason** <jason.irizarry@uconn.edu>                                       Tue, Feb 15, 2022 at 9:10 AM
To: "Brown, Tiffany" <tiffany.brown@uconn.edu>, "Burton, Laura" <laura.burton@uconn.edu>

Hi Tiffany,

If you are on campus today, we can meet in my office at 1:00. If not, please let me know and I can send a
TEAMS link for the meeting.

I look forward to speaking with you.

Best,

Jason

Jason G. Irizarry, Ed.D.

Dean, Neag School of Education

249 Glenbrook Rd.

Storrs, CT 06269-3064

860-486-1241

jason.irizarry@uconn.edu

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                                        Tue, Feb 15, 2022 at 2:31 PM
To: "Irizarry, Jason" <jason.irizarry@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>

Laura and Jason -

Thank you again for meeting with me today, I think that conversation was a great start.
Here are lingering questions I hope we can discuss some answers to by our next
meeting:

1. How do I develop analogous summer teaching opportunities to those available to
   the sports management faculty hired at my salary range, given our program

specific needs? The fact that I would have to develop those courses *and* hope for there to be enough student enrollment leaves it unclear for me how else I could effectively supplement my salary in this way, while also having the time to dedicate to growing my research agenda (rather than developing new courses for the department).

2. How do we moderate my vulnerability to the possibility of being assessed/judged differently than more senior faculty who also teach PhD/EdD students given:
   1. differential standards of rigor for doctoral students across the department
   2. my implementing - as the only formally trained organizational scholar - innovative approaches to organizational and DEI related studies which are not well supported by the current "infrastructure" of the department (evidenced by its curricular offerings and current approaches to these disciplines offered through them)?
   3. the expectation that I fill in the gaps by "overassisting" senior faculty who may not have the resources or training to effectively support doctoral students in the study of various forms of research bias (specifically that related to issues of subjectivity and positionality)?
3. Related to question 1: How do I increase or diversify my earnings sources aside from salary given:
   1. that I don't have the same opportunities as folks hired at my base salary to teach at the undergraduate and masters levels?
   2. the lack of collegial respect towards me demonstrated in initial interactions with the Dean of Research, which do not support the assumption that my work will be any more equitably considered than I was equitably treated in the process of being given access to my office?

Please let me know when we can next touch bases on these issues in particular. I look forward to continuing this conversation.

Have a great week,

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

Tiffany Brown <tiffany.brown@uconn.edu>                                Tue, Feb 15, 2022 at 2:34 PM
To: "Irizarry, Jason" <jason.irizarry@uconn.edu>
Cc: "Burton, Laura" <laura.burton@uconn.edu>

I forgot an important fourth!

4) Under what circumstances could I feasibly teach the EdD course I am currently assigned to cover this fall, given my need to travel safely using public transportation after dark?

Thanks again,
Tiffany

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Mon, Mar 21, 2022 at 11:14 AM
To: michaelbailey@uconnaaup.org

2

**Tiffany Brown, Ph.D.**
Assistant Professor
Department of Educational Leadership
Neag School of Education
University of Connecticut
249 Glenbrook Road, Unit 3093
Storrs, CT 06269

[Quoted text hidden]

---

**Mailtrack Reminder** <reminders@mailtrack.io>               Tue, Mar 22, 2022 at 11:14 AM
Reply-To: michaelbailey@uconnaaup.org
To: tiffany.brown@uconn.edu

⚠ Your email to michaelbailey@uconnaaup.org has not been opened yet. Snooze for 24H, 48H or 72H (disable)

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Tue, Mar 22, 2022 at 12:34 PM
To: David Amdur <DavidAmdur@uconnaaup.org>

[Quoted text hidden]

---

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Thu, Aug 4, 2022 at 3:11 PM
To: tiffanybrownphd@gmail.com

[Quoted text hidden]

          Sender notified by
          Mailtrack

---

**Mailtrack Reminder** <reminders@mailtrack.io>               Fri, Aug 5, 2022 at 3:11 PM
Reply-To: tiffanybrownphd@gmail.com
To: tiffany.brown@uconn.edu

⚠ Your email to tiffanybrownphd@gmail.com has not been opened yet. Snooze for 24H, 48H or 72H (disable)

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Wed, Aug 17, 2022 at 8:45 AM
To: tiffanybrownphd@gmail.com

> **Tiffany Brown, Ph.D.**
> Assistant Professor
> Department of Educational Leadership
> Neag School of Education
> University of Connecticut
> 249 Glenbrook Road, Unit 3093
> Storrs, CT 06269

   Sender notified by
Mailtrack

**Mailtrack Reminder** <reminders@mailtrack.io>                Thu, Aug 18, 2022 at 8:45 AM
Reply-To: tiffanybrownphd@gmail.com
To: tiffany.brown@uconn.edu

   [Quoted text hidden]

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Fri, Nov 4, 2022 at 7:48 PM
To: tiffanybrownphd@gmail.com

> **Tiffany Brown, Ph.D.**
> Assistant Professor
> Department of Educational Leadership
> Neag School of Education
> University of Connecticut
> 249 Glenbrook Road, Unit 3093
> Storrs, CT 06269

   Sender notified by
Mailtrack

**Tiffany Brown** <tiffany.brown@uconn.edu>                    Tue, Nov 8, 2022 at 1:31 PM
To: tiffanybrownphd@gmail.com

> **Tiffany Brown, Ph.D.**
> Assistant Professor
> Department of Educational Leadership
> Neag School of Education
> University of Connecticut
> 249 Glenbrook Road, Unit 3093
> Storrs, CT 06269

---------- Forwarded message ---------
From: **Tiffany Brown** <tiffany.brown@uconn.edu>
Date: Fri, Nov 4, 2022 at 7:48 PM
Subject: Fwd: Meeting today
To: <tiffanybrownphd@gmail.com>

[Quoted text hidden]

 Sender notified by
Mailtrack